VERNON FIRE AND CASUALTY INSURANCE COMPANY *v.* JIMMIE
D. MATNEY, BY HIS NEXT FRIEND, BURTON MATNEY.

[No. 1-1075A186.  Filed July 15, 1976.]

*J. Lee McNeely,* of Shelbyville, for appellant.

*Phillip W. Brown, Brunner, Brown & Brunner,* of Shelbyville, for appellee.

LYBROOK, J.—Defendant-appellant, Vernon Fire and Casualty Insurance Company (Vernon), brings this appeal from the granting of a Motion for Summary Judgment in favor of plaintiff-appellee, Jimmie D. Matney, (Matney).  This action was initiated by Matney against his insurer, Vernon, following a judgment against an uninsured motorist, Ethel Thoms. Vernon contended that: (1) as Matney's insurer, it would not have been a proper party to the suit against Thoms, (2) that Vernon had no right or duty to intervene in the Matney vs.

Thoms action, and (3) that the judgment against Thoms could not be binding against Vernon.

Following an adverse ruling by the trial court on the above issues, Vernon brings this appeal.

The pertinent facts reveal that on or about July 31, 1968, the plaintiff Matney was a passenger on a motorcycle operated by Lowell D. Overman. Matney received severe injuries to his leg, which ultimately required amputation, as a result of a collision with an automobile operated by Ethel Thoms. At that time, Thoms was uninsured.

Thereafter, Matney brought an action in Shelby Circuit Court against Thoms on September 9, 1969. Notice was given to Vernon of the impending action against Thoms as set forth in the agreed stipulation of facts entered into by the parties:

"(a) On October 2, 1968, notice was given by letter of intention to hold a claim under Part IV of such policy, . . .

(b) On December 31, 1968, said insurance company was again notified by letter, . . .

(c) The Vernon Insurance Company acknowledged the notice of the letter of December 31, 1968, by their letter of January 14, 1968, . . .

(d) On March 10, 1969, Vernon Insurance Company received verbal notice of said accident and claim, and acknowledged such verbal notice by their letter of March 12, 1969, . . .

(e) On September 9, 1969, the Vernon Insurance Company was again notified in writing of said accident and claim and was served with a copy of the complaint and summons of Jimmy D. Matney vs. Ethel Thoms, . . . and which notice was acknowledged by said insurance company on September 12, 1969, by their letter, . . .

(f) On June 4, 1970, Vernon Insurance Company was served with notice of the Order on the Motion for Summary Judgment, by letter, . . . which service and notice was acknowledged by said company by letter on June 9, 1970, . . .

(g) On July 22, 1970, the Vernon Insurance Company was given notice by letter of the judgment rendered against the defendant, Ethel Thoms, in the amount of $25,000.00, which letter demanded payment of such judgment by Vernon Fire & Casualty Insurance Company, . . . which letter and notice

was acknowledged by said company on July 24, 1970, by a letter from such company, . . ."

Prior to beginning the action against Thoms, Matney had served Vernon with notice of his intention to assert a claim under the uninsured motorist provisions of the insurance policy.

On June 3, 1970, summary judgment as to liability was entered against Thoms, and on June 19, 1970 a judgment of $25,000 was rendered for Matney.

Payment under the Family Protection Coverage (uninsured motorist) was demanded from Vernon and refused.

On July 29, 1970, plaintiff commenced this action demanding the payment of the $10,000 policy limit under the uninsured motorist coverage. Summary judgment was granted in favor of plaintiff and defendant timely filed this appeal.

Three basic issues are presented by Vernon for review:

(1) Did the defendant have a right or duty to intervene in the action between Matney and Thoms?
(2) Was the defendant a proper party to the Matney vs. Thoms action?
(3) Is the judgment against Thoms binding upon, and enforceable against Vernon?

### . I.

The first issue presented for review poses a most difficult problem for this court. Should the policy of avoiding multiplicity of litigation be superior or inferior to the possible conflict of interest if an insurance company is allowed or required (should the carrier desire to contest the liability or damage issues) to intervene as a defendant in a suit initiated by its insured against an uninsured motorist?

The dilemma has twice previously reached the Court of Appeals and a seemingly conflicting result was reached in those cases. *Indiana Insurance Co.* v. *Noble* (1970), 148 Ind. App. 297, 265 N.E.2d 419 held that the overriding consideration must be the avoidance of multiplicity of litigation when pos-

sible. *Noble* held that the insurer would be allowed to intervene as a defendant in an action by its insured against an uninsured motorist. *Noble* further upheld a summary judgment which made a liability and damage judgment binding upon an insurer who had failed to intervene after its insured had given it notice of the litigation.

The later case, *Smith* v. *Midwest Mutual Insurance Company* (1972), 154 Ind. App. 259, 289 N.E.2d 788 approached a nearly identical problem and reached an opposite conclusion. *Smith* held that an insurer could not be allowed to intervene in an action between its insured and an uninsured motorist and that any judgment reached in that first action would not be binding upon the insurer.

While subtle differences do exist among *Smith, Noble* and the present case, the basic and critical questions are identical. Does the insurer have a right to intervene and is a judgment binding?

*Noble* delineated four basic options for an insured in an action to recover for injuries resulting from a collision with an uninsured motorist:

"1. He may file an action directly against his insurance company without joining the uninsured motorist as a party defendant and litigate all of the issues of liability and damages in that one action. *Wortman* v. *Safeco Ins. Co., supra; Hill* v. *Seaboard Fire and Marine Ins. Co., supra; Boughton* v. *Farmers Ins. Exchange, supra; Travelers Indemnity Co.* v. *Debose,* 226 N.Y.S.2d 16 (1960) ; and *State Farm Mutual Auto. Ins. Co.* v. *Matlock,* Tex. Civ. App., 446 S.W.2d 81 (1969). See also *Lawrence* v. *Continental Ins. Co.,* La. App., 199 So.2d 398 (1967).

2. He may file an action joining both the uninsured motorist and the insurance company as party defendants and litigate all of the issues of liability and damages in that action. See *American Fid. Fire Ins. Co.* v. *Hartford Accident and Indem. Co.,* S.C., 163 S.E.2d 926 (1968), and Widiss page 273. See also, *Hill* v. *Seaboard Fire and Marine Ins. Co., supra.*

3. He may file an action against the uninsured motorist alone without joining the insurance company as a party

defendant and litigate the issues of liability and damages. In such case he gives preliminary and adequate notice of the filing and pendency of such action to the insurance company so that they make [sic] take appropriate action including intervention.

4. He may file an action against the uninsured motorist and give no notice to the insurance company."

It is axiomatic that action taken under options one and two will bind the insurance carrier. An action brought under option four is not binding upon the insurance company. However, option three grants certain latitude and choices to the insurance carrier. The carrier's first and most obvious decision is whether or not to move to intervene as a defendant in the action.

Ind. Rules of Procedure, Trial Rule 24(A) governs the intervention of the insurer into the action. TR. 24(A) states:

"(A) Intervention of right. Upon timely motion anyone shall be permitted to intervene in an action

(1) when a statute confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to a property, fund or transaction, which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties."

A careful examination of the cases discloses a conflict among the various jurisdictions as to whether or not intervention will be permitted in these cases.

However, the cumulative effect of the spirit of the Indiana Trial Rules, the interests of justice, the avoidance of multiple litigation and the conservation of judicial time compels our conclusion to allow intervention by the insurer.

Clearly the basis of the action by Matney against Vernon is contractual. However, any action on the contract is insep-

arably tied to the legal liability of Thoms. Therefore, the initial action in which the liability of Thoms is determined is but the first link in an unbroken chain leading to the contractual liability of Vernon.

The rule allowing intervention does not require the judgment be binding upon the party petitioning to intervene. It merely requires that the intervenor be so situated that as a *practical matter* the disposition of the action *may* impede or impair his interests. In construing a nearly identical Federal Rule dealing with intervention the court said:

> "Res judicata would not apply to bar Kinnard's suit. But stare decisis, which dictates respect for prior judicial determination of identical points of law, would loom large in any attempt by Kinnard to achieve a favorable resolution . . ." *Martin* v. *Travelers Indemnity Company* (1971), 450 F.2d 542, 554.

As we have heretofore noted, a judgment against an uninsured motorist, if no intervention was allowed, would not be binding on an insurance carrier; however, that decision on liability issues would present a most formidable barrier for the carrier to overcome in a separate and subsequent action. In essence, intervention logically leads to the prevention of conflicting results in the outcome of two actions to decide the identical questions.

One other possibility weighs heavily in our decision to allow intervention and make the judgment binding between Matney and Vernon. Should it not be binding, either Matney or Vernon would be allowed to pick and choose between judgments. Should the original judgment be against Matney, he could ignore that verdict and proceed against the insurance carrier, employ a new strategy, and perhaps prevail as to liability at the second trial and thus avoid the adverse finding as to liability at the first trial. Vernon would no doubt argue that the first trial should be binding had Thoms been held not liable to Matney. To allow either an insured or an insurer to await the outcome of an action against an uninsured motorist

by the insured, and then determine their position on the binding effect of the first action, leads directly to a second and unnecessary litigation of the same issues.

We therefore hold that the insurer has the right to intervene and have a full and complete adjudication of all the issues at a single trial. To the extent that this holding conflicts with *Smith* v. *Midwest, supra,* we choose not to follow *Smith*[1] but instead return to the line of reasoning expressed in *Noble*.

## II.

Vernon next contends that it was not a proper party to the action between Matney and Thoms. We disagree. All three parties are intimately concerned with the same event and the same issue of fact which resulted in liability being imposed upon Thoms and ultimately upon Vernon. This similarity of issues and interests makes it clear that Vernon could have also been joined by Matney as a defendant and Vernon does not deny Matney's right to bring an action against it. However, Vernon does strongly contend that it cannot be made a party because of the possible conflict of interest in an action by an insured against an insurer who is defending an uninsured motorist. While it must be conceded that some conflict does arise, it appears to be ultimately unavoidable. If Vernon is not a proper party to an action between Matney and Thoms, Matney would be forced to obtain a judgment against Thoms and then institute an action against Vernon. At that time, Matney would be required to retry the liability and damage aspects of the original action and thus have the exact same conflicts of interest and ethical problems as was presented in the original action.

---

1. This writer is not unaware of his concurrence in *Smith* v. *Midwest, supra*. At that time it was felt that the overriding consideration was the potential conflict of interest between the carrier and its assured arising as a result of intervention. The writer is still concerned over this aspect of the relationship but is now convinced that the potential for conflict of interest will always be present regardless of whether the matter is disposed of in one trial or two. The cumulative effect of other considerations, as stated in the body of this opinion, has forced the writer to re-evaluate his former position.

A quite similar problem of conflict of interests arises when both parties to a suit are insured by the same insurance carrier. This conflict is heightened when the defendant in that action chooses to counterclaim and thus places the insurer in a position that requires defense of both sides of the action and places the carrier at odds with the interests of both of their assureds. Yet, this conflict of interest is unavoidable and must be tolerated, much as the possible conflict in the case at bar.

Since the conflict will ultimately occur in any event, we find that avoidance of multiple litigation, and the possibility of conflicting results are paramount considerations. Thus we hold that Vernon would have been a proper party to the Matney vs. Thoms action, and that the conflict of interest was not sufficient to prevent Vernon from defending its interests, had it elected to do so.

## III.

Vernon finally contends that the judgment against Thoms is not binding against it as to the liability or damage issue. We do not agree.

While it is quite true that this case does not conform to the classical mold of *res judicata* or collateral estoppel, *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N.E.2d 448; as was demonstrated above, the availability of intervention does not turn on the application of *res judicata* alone. Here, as in *Noble, supra,* Vernon was given detailed information in relation to every major step of the litigation between Matney and Thoms. The record shows that Vernon repeatedly disclaimed any coverage or liability to Matney and refused to enter the action after Matney had thoroughly and frequently notified Vernon of all major actions being taken against Thoms.

In the case at bar, the judgment against Thoms binds Vernon for at least two reasons, in addition to the reasoning

expressed above. Firstly, Vernon tacitly waived any possible defenses regarding the liability of Thoms and damages to Matney when it neglected to intervene in the original action. Secondly, the language of the insurance contract and the statute requiring uninsured motorist coverage both lend themselves to holding Vernon to the judgment against Thoms. Under Part IV of the insurance policy issued to Burton Matney by Vernon it is stated:

> "Coverage J—Family Protection (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

> "No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

In the statute requiring uninsured motorist coverage it is stated at IC 1971, 27-7-5-1 (Burns Code Ed.):

> ". . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

The key determinant of both the policy and the statute is the "legally entitled to recover" language. It is difficult to imagine that a judgment rendered by a court of competent

jurisdiction would not legally entitle Matney to recover the damages specified by that judgment.

By harmonizing the language in the statute with the policy, we conclude that the judgment must be binding. This is especially true in light of three factors: (1) The law applicable in Indiana at that time invalidated arbitration agreements. *Indiana Insurance Co.* v. *Noble, supra. Lerma* v. *Allstate Ins. Co.* (1968), 301 F.Supp. 361 (N.D. Ind.). That fact would preclude the use of the arbitration clause in the policy. "Consent to sue" provisions have also been frequently held to be invalid and fall with arbitration clauses. (2) In addition, the law at the time of the Matney accident, precluded arbitration as to disputes involving minors. IC 1971, 34-4-1-1 (Burns Code Ed.). (3) As a final fatal blow to any arbitration requirement argument, Vernon failed to make an affirmative demand for arbitration. Such failure on its part waives any right to arbitration. 7 Am.Jur.2d *Automobile Ins.* § 138, p. 466; *Allstate Ins.* v. *Pietrosh* 85 Nev. 310, 454 P.2d 106 (1969).

A portion of Vernon's argument concerns a denial of its "Day in Court" should the judgment against Thoms be held binding on Vernon. This contention overlooks a key element of the factors necessary to make the judgment binding.

First and foremost, the plaintiff must give notice to the insurer for a judgment to be binding. There must be such notice as to allow the insurer appropriate time to intervene and realistically assert any defenses which may exist. Leading cases hold that a default judgment, taken without notice to the insurance carrier, will not be binding on that carrier. *MFA Mutual Ins. Co.* v. *Bradshaw*, 245 Ark. 95, 431 S.W.2d 252 (1968) and *Indiana Insurance Co.* v. *Noble, supra.*

Vernon was not denied its day in court. By ignoring the progress of the proceedings against Thoms, Vernon waived its right to assert any defenses which Thoms may have had to the action by Matney. However, Vernon retained any defenses

which it may have had to the contract of insurance, i.e. fraud, misrepresentation or collusion, etc.

In summation, should Vernon have desired to raise Thoms' defenses, it was obligated to intervene in the action between its insured, Matney, and the uninsured motorist Thoms. Absent the intervention by Vernon, it is bound by the judgment against Thoms as to damages and liability.

In Matney's action against Vernon, Vernon did not raise any of its possible contractual defenses. In light of our holding above and Vernon's failure to raise any contract defenses, it is evident that there were no material issues in dispute and the trial court properly granted Matney's motion for summary judgment.

Finding no error, we affirm.

Robertson, C.J., concurs; Hoffman, J., participating by designation, concurs.

NOTE.—Reported at 351 N.E.2d 60.