Beve STEWART, Appellant–Plaintiff,

v.

James A. WALKER, Hawkeye Security, and Nationwide Mutual Insurance, Appellees–Defendants.

No. 43A05–9109–CV–299.

Court of Appeals of Indiana, Fifth District.

Aug. 19, 1992.

Rehearing Denied Oct. 16, 1992.

Robert W. Miller, Miller & Miller, Elkhart, for appellant-plaintiff.

James F. Groves, Hardig, Lee & Groves, Robert J. Palmer, Arthur A. May, May, Oberfell & Lorber, South Bend, for appellees-defendants.

BARTEAU, Judge.

In a collision between the vehicles of BeCraft and uninsured motorist Walker, BeCraft's passenger, plaintiff-appellant Beve Stewart, was injured. That was on May 8, 1987. On May 4, 1989 Stewart filed a complaint in Elkhart Superior Court against Walker. On June 30, 1989 that

court, the Honorable Stephen Platt, entered a default judgment against Walker and simultaneously awarded Stewart $80,000 in damages.

Thereafter, Stewart sought satisfaction of judgment from defendants-appellees Nationwide Mutual Insurance Company and Hawkeye Security. Stewart held a policy with $100,000 worth of uninsured motorist insurance from Hawkeye. BeCraft had $25,000 worth from Nationwide. After both insurers refused to pay, Stewart filed for a declaratory judgment as to their obligations. On motion by Nationwide, the case was venued to Kosciusko County.

The parties filed affidavits, memoranda, and stipulations, including that Walker was at fault for the collision, that the Nationwide coverage was primary, and that Nationwide had made medical payments for Stewart. Each then moved for summary judgment. Stewart contended the insurers were bound by the default judgment. Hawkeye argued that although it had received from Stewart a copy of the complaint filed against Walker, Stewart failed to advise it when service of process was made on Walker, thereby depriving Hawkeye of its rightful opportunity to intervene in Stewart's suit against Walker, and that Stewart's stating in the letter accompanying the copy of the complaint "as this matter proceeds, I will keep you advised at all times" created a promissory estoppel. Nationwide raised three defenses from the terms of the insurance policy it sold to BeCraft, arguing that Stewart: (1) obtained the judgment against Walker without Nationwide's consent; (2) did not meet the policy's time limit for filing suit against Nationwide; and, (3) did not send Nationwide a copy of the summons and complaint filed against Stewart.

The Kosciusko court found there was no genuine issue of fact, and rejected Nationwide's argument that Stewart had not brought his action against it within the time limit set out in its policy. The remainder of the lower court's order is less clear to us. Although it is certain that the upshot was to set the case for trial on the amount of Stewart's damages, we are unsure about the trial court's reasoning. Although the order was not phrased in terms of granting or denying any of the three motions for summary judgment, it seems best interpreted as having denied all three.[1]

However, our difficulty in discerning the trial court's theory poses no difficulty, because "on appellate review the trial court's judgment will be affirmed if sustainable on

---

1. The order states, in pertinent part:

B. The point is made that adequate notice was not given to the [insurers] because [Stewart's] attorney did not follow through upon his promise to keep the [insurers] informed with respect to the claim against [Walker]. While [Stewart's] counsel may be faulted to this point, he may not be faulted any more than the [insurers] may be faulted for apparently or possibly failing to comply with the unfair claims settlements practices act in Indiana Code 27-4-1-4.5 in that they failed, perhaps, to acknowledge and act reasonably promptly upon communications with respect to claims, failed to adopt and implement reasonable standards for the prompt investigation of claims, or failed perhaps in good faith to [e]ffectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear. An insurance company who sells a policy [h]as an affirmative duty [to] come out of the woodwork and assist the policy holder from whom they took premiums in managing their claims. This does not mean that the insurance company has to stand by and acquiesce to unjust claims. They do have a duty to affirmatively act with respect to just claims.

C. Under the policy provisions neither [Hawkeye nor Nationwide] is bound by the default judgment which [Stewart] received against [Walker]. Since it is stipulated that Walker was liable and the only question remaining is the reasonable damages of [Stewart] then, since the [insurers] are not bound by that judgment, they are entitled to a trial upon the issue of damages. IT IS THEREFORE CONSIDERED AND ORDERED:

1. That [Nationwide and Hawkeye] are each liable to [Stewart] upon their uninsured and underinsured coverage with Nationwide being primary and the Hawkeye policy coming in after the Nationwide policy has been exhausted and subject to the determination of [Stewart's] damages.

2. That the defendants, Nationwide and Hawkeye, are not bound by the default judgment obtained by [Stewart] and against [Walker] on June 30, 1989 and that this trial be continued for further proceedings by which this action shall be submitted for trial to determine the issue of [Stewart's] damages and for which the defendant[s] may be liable under their uninsured and underinsured policies.

any theory or basis found in the record." *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157, *reh'g denied.* That doctrine applies in summary judgment cases. *Id.* This case presents no question of fact; therefore our task is to determine whether the trial court correctly applied the law to the undisputed facts. *See Connell v. American Underwriters, Inc.* (1983), Ind. App., 453 N.E.2d 1028, 1029, *trans. denied.*[2]

## HAWKEYE

### A.  OPPORTUNITY TO INTERVENE

Where a plaintiff with uninsured motorist coverage sues an uninsured motorist without naming the insurer as a party defendant, Indiana law allows the insurer to intervene to protect its interests, because the judicial economy in avoiding multiple lawsuits outweighs the conflict of interest created by such intervention. *Vernon Fire and Casualty Ins. Co. v. Matney* (1976), 170 Ind.App. 45, 47–52, 351 N.E.2d 60, 63–65; *see also Indiana Ins. Co. v. Noble* (1970), 148 Ind.App. 297, 265 N.E.2d 419, *trans. denied; but cf. Snodgrass v. Baize* (1980), Ind.App., 405 N.E.2d 48, *reh'g denied* 409 N.E.2d 645. The dispute between Hawkeye and Stewart is whether Hawkeye had adequate and timely notice of Stewart's suit against Walker such that Hawkeye could have intervened.

*Matney*, citing *Noble*, sets out four procedural options for a plaintiff suing an uninsured motorist:

1.  Sue the insurer directly without joining the motorist as a party defendant.
2.  Sue the insurer and the motorist as party defendants.
3.  Sue the motorist alone but give notice of the suit to the insurer.

4.  Sue the motorist alone but give no notice to the insurer.

Under options one or two, the insurance company is bound by the outcome; that is "axiomatic." *Matney*, 170 Ind.App. at 49, 351 N.E.2d at 63. Under option four, the insurance company plainly is not bound. *Id.*

Under option three, the plaintiff in an ordinary case "gives preliminary and adequate notice of the *filing and pendency* of such action to the insurance company so that they [may] take appropriate action including intervention." *Id.* (emphasis added). Appropriate action for an intervening insurer includes seeking a declaratory judgment to evaluate defenses derived from the terms of the policy, or retaining counsel for the uninsured driver in the underlying tort action, or both. *See, e.g., Liberty Mut. Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, 902, *trans. pending; see also* Note, *Insurer Intervention in Uninsured Motorist Cases*, 55 Ind.L.J. 717 (1979). If, having received notice, the insurance carrier desires to raise the defenses available to the uninsured motorist, the carrier must intervene in the plaintiff's action against that motorist. Failure to do so will bind the insurer to a judgment against the motorist. *Matney*, 170 Ind. App. at 55, 351 N.E.2d at 67. However, failure to intervene will not deprive the insurer of defenses based in the contract of insurance. *Id.*

Hawkeye neither intervened in Stewart's action against Walker nor raised any contractual defenses. Therefore, Hawkeye is bound by the default judgment, including the amount of damages, provided it had a realistic opportunity to intervene therein,

**2.**  Nationwide asserts in passing that whether it received adequate notice of Stewart's suit against Walker is a question of fact. We think that incorrect. Stewart's motion for summary judgment included copies of the correspondence between Stewart and Nationwide, as well as an affidavit attesting to those copies, thereby avoiding the factual question of the accuracy of the correspondence that precluded summary judgment in *Allstate Ins. Co. v. Neumann* (1982), Ind.App., 435 N.E.2d 591, 597. Nationwide in its summary judgment motion did not contest any of Stewart's submissions. Thus, there is no question of fact about the correspondence itself, and whether it amounts to adequate notice is a question of law. *See Cobbum v. Ameritrust Nat'l Bank, Michiana* (1991), Ind.App., 580 N.E.2d 969; *see also Miller v. Dilts* (1984), Ind., 463 N.E.2d 257, 263, *reh'g denied (quoting London Guarantee and Accident Co. v. Siwy* (1904), 35 Ind.App. 340, 345–46, 66 N.E. 481, 482–83).

or, unless it can prevail on its secondary theory of promissory estoppel.

■ The arguments revolve around the statement in *Matney* that a non-intervening insurer will be bound by a judgment against an uninsured motorist if it had notice of the "filing and pendency" of the complaint. Hawkeye argues that "filing and pendency" means more than mere notice that a lawsuit has been filed; rather, it must include notice that service of process has been made on the uninsured motorist. Pointing out that although it received a copy of the complaint in Stewart's suit against Walker, it did not receive a copy of the summons served on Walker, Hawkeye asserts it is not bound by the default judgment.

Stewart's argument focuses on Hawkeye's answer to Stewart's action for declaratory judgment. Hawkeye "admit[ted] that it was advised of a filing and pendency of the underlying lawsuit, but denie[s] that it was given any notice of the hearing on damages." Stewart views that as conclusive of whether Hawkeye received such notice as to bind it to the default judgment pursuant to *Matney*.

Hawkeye quotes *Waugh v. Kelley* (1990), Ind.App., 555 N.E.2d 857, 859 for the idea that the weight of an admission "depends upon its character, [and] the circumstances under which it was made...." Hawkeye characterizes its admission of notice of filing and pendency of Stewart's lawsuit against Walker as "a poor choice of words" but argues that because Stewart failed to advise it that service had been made on Walker, and because it received no notice of the hearing on damages, it did not have notice of the suit's "pendency."

First, we are of the opinion that Hawkeye has lost this argument through its admission. Calling it a poor choice of words does not change its import. Moreover, Hawkeye has not explained the circumstances under which the admission was made, or why the admission should not be deemed conclusive.

■ Second, we are of the opinion that Hawkeye is bound by the default judgment

independently of its admission of notice of "filing and pendency." To have the case turn on whether Hawkeye received a copy of the summons served on Walker seems unduly formalistic. Insofar as service of alias summons requires nothing more than leaving a copy of the summons and complaint at the defendant's dwelling place along with mailing a copy to the defendant's last known address, Ind.Trial Rule 4.1(A)(3) and (B), the substantively important inquiry is whether the insurer has received written notice that a suit has been filed, not notice that service has been made. When an insured sues a purportedly uninsured motorist, the presumably sophisticated insurer should recognize the possibility that the defendant will turn out judgment proof, and that therefore a judgment against the motorist is likely to yield a demand for payment under the policy. In this context, receiving a copy of a complaint filed by its insured against a purportedly uninsured motorist, early enough to allow intervention, suffices to inform the insurer that its interests may be in jeopardy, and therefore providing an instigation for it, as expressed by the court below, "to come out of the woodwork" and enter its appearance in the trial court. We think it significant that T.R. 3 links the commencement of an action to the filing of the complaint, not to service of it on the defendant. Similarly, it is the filing of the complaint, rather than service of it, that tolls a statute of limitations. *See Geiger and Peters, Inc. v. American Fletcher Nat'l Bank & Trust Co.* (1981), Ind.App., 428 N.E.2d 1279. Moreover, once an insurer enters its appearance, it is entitled under T.R. 5 to service by the plaintiff of all the plaintiff's submissions, thus keeping it apprised of developments in the suit. Conversely, an insurer that does not intervene runs the risk that the plaintiff will obtain a judgment, that the defendant will prove to be judgment proof, and that the plaintiff will seek satisfaction from the insurer.

The precedents do not require that the insurer receive a copy of the process served on the uninsured motorist to bind the insurer. The "filing and pendency" phrase was dicta in both *Matney* and *No-*

*ble.* In both cases the insurer's knowledge of pending litigation was not at issue, and nothing in either case suggests the phrase was meant to include notice of service of process on the uninsured motorist defendant. Rather, *Matney* speaks of "such notice as to allow the insurer appropriate time to intervene and realistically assert any defenses which may exist." 170 Ind. App. at 54, 351 N.E.2d at 66. In *Noble,* where the "filing and pendency" phrase first appeared, the trial court had made a finding of fact that the insurance company was notified "that a suit for damages had been filed against said uninsured driver," 148 Ind.App. at 304, 265 N.E.2d at 424, but made no finding regarding notice to the insurer of service of process on the uninsured motorist, and the appellate court decided the case without attributing any significance to the absence of a finding regarding service of process. A later case, *Allstate Ins. Co. v. Neumann* (1982), Ind. App., 435 N.E.2d 591, 597 is silent as to service of process on the defendant motorist, stating instead that if an insurer "had adequate and timely notice that there was a genuine, if conditional, claim being made under its uninsured motorist clause under circumstances where it could have taken appropriate action, including intervention, to protect its interests, then it is bound by the judgment rendered." For a similar result in a similar case, see *Nationwide Mut. Ins. Co. v. Webb* (1981), 291 Md. 721, 436 A.2d 465 (case No. 513).

▮ The pertinent written correspondence of record is as follows: Stewart's letter dated February 7, 1989 to advise Hawkeye of Stewart's claim; Hawkeye's response dated February 17 that Stewart's Hawkeye policy would be secondary to any insurance policy of BeCraft, and asking whether BeCraft was insured; and, Stewart's letter dated May 22, enclosing a copy of the complaint, noting summons and complaint had been returned unserved but a new address had been obtained and alias summons had issued. As stated earlier,

the default judgment was entered on June 30.[3]

Thus, more than thirty days passed between Hawkeye's receiving a copy of the complaint and the default judgment. Mindful, for a yardstick, that T.R. 6 contemplates only twenty-three days for a defendant to file responsive pleadings after service by mail, we conclude that Hawkeye had a realistic opportunity to intervene, but declined to do so, choosing instead to rely on its position as the secondary insurer. Nothing in the record indicates that Hawkeye intended to raise the defenses available to Walker, including disputation of the amount of Stewart's damages. By declining to raise the defenses available to Walker, despite a realistic opportunity to do so, Hawkeye must accordingly be deemed bound by the default judgment. *See also Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.* (1978), 177 Ind.App. 508, 523, 380 N.E.2d 571, 581 (where buyer sued manufacturer, who filed third party complaint for indemnity against supplier of raw material, and manufacturer tendered its defense to supplier, who declined to defend manufacturer, fact that supplier was not notified of trial date in suit between buyer and manufacturer did not preclude binding effect of the trial on supplier, because there was no indication that supplier would have changed its position if it had been notified).

### B. PROMISSORY ESTOPPEL

Hawkeye argued in its motion for summary judgment a theory that Stewart's correspondence, in particular the letter of May 22, enclosing a copy of the complaint and stating "[a]s this matter proceeds, I will keep you advised at all times," provided a defense under the doctrine of promissory estoppel. That doctrine is "[a] promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided

---

**3.** Stewart's motion for summary judgment included copies of correspondence between Stewart and Hawkeye, and an affidavit by counsel

attesting to the authenticity of the copies. Hawkeye has not challenged the accuracy of those submissions. *See* note 2, *supra.*

only by enforcement of the promise." *First Nat'l Bank of Logansport v. Logan Mfg. Co.* (1991), Ind., 577 N.E.2d 949, 954 (quoting Restatement (Second) of Contracts § 90).

The court below did not rule on this point. Where a party raises two arguments at trial, and the trial court decides in favor of that party on one of the theories and thus does not reach the second, remand is appropriate if the appellate court reverses. *See Larabee v. Booth* (1982), Ind. App., *on reh'g*, 440 N.E.2d 489. However, Hawkeye has abandoned this theory on appeal, focusing instead on the notice issue, and stating at page 20 of its brief that "regardless of whether Appellee Hawkeye's contention that it relied, to its detriment, upon a promise made by Appellant's counsel has merit, it is not material to the resolution of this appeal." Therefore, Hawkeye has waived this issue.

## NATIONWIDE

Nationwide argued in its motion for summary judgment that Stewart failed to comply with three conditions precedent set out in the uninsured motorist coverage of the insurance policy it sold to BeCraft. The three conditions precedent are (1) "legal action against the company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred," (2) "judgment against the uninsured of liability or amount of damages will be binding only if it was obtained with our written consent," and (3) "[i]f an insured ... brings legal action for accidental bodily injury against any party legally responsible for use of a motor vehicle involved in the accident, a copy of the summons and complaint or other process served must be sent immediately to the company."

The trial court unequivocally ruled against Nationwide on condition (1), and Nationwide has accordingly styled the argument in its appellee's brief on the point as a cross-appeal, along with argument on condition (3). The "consent to sue" condition has been argued as a direct appeal, along with a *Matney* notice argument like that raised by Hawkeye.

Nationwide raised the *Matney* issue in its supporting memorandum on summary judgment, although close reading is required to find it. There is neither discussion nor citation of *Matney*. Instead, the question is tacked onto the consent to sue condition through argument that the condition's "importance ... is clearly apparent because if a default judgment is going to be obtained, [Nationwide] must have the right to contest the amount of the default judgment." Record at 96.

The record includes the following written communications: on February 7, 1989 Stewart wrote to advise Nationwide of his uninsured motorist claim, stating the skeletal facts of the BeCraft/Walker collision, and concluding "[i]f there is any further information you need to process this uninsured motorist claim, please advise"; on May 23, 1989 Stewart informed Nationwide a complaint naming Walker as defendant had been filed on May 4, and that there had not yet been service of process on Walker, but that Stewart had a new address for Walker and had issued an alias summons and complaint on May 19; and, on June 16 Nationwide responded, informing Stewart of the policy's time limit condition precedent and denying coverage because "the accident occurred on May 8, 1987 and we did not receive notice of Mr. Stewart's claim until more than two years after that date." Thus, as with Hawkeye, Stewart's May 23 letter gave Nationwide adequate and timely notice such that Nationwide could have intervened, but Nationwide declined the opportunity, choosing instead in its June 16 letter to rely on its condition precedent theory. In writing "we did not receive notice until more than two years" after the collision, Nationwide accepted Stewart's notice as adequate, and made no request for either more facts or more time to prepare a response. Having declined to intervene in Stewart's action against Walker, despite a realistic opportunity to do so, Nationwide is bound by the default judgment, unless it can prevail on a defense derived from its insurance policy.

*Matney,* 170 Ind.App. at 55, 351 N.E.2d at 67.

■ Stewart argues against Nationwide's contractual defenses on the merits, and on the theory that Nationwide's non-response to the February 7 letter amounts to a waiver of those defenses, citing *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. We find the waiver argument dispositive.

*Huff* explains that an insurer may be held to have waived conditions precedent, or may be estopped from asserting them. 266 Ind. at 423–27, 363 N.E.2d at 991–93. Similarly, Indiana courts have refused to enforce provisions in uninsured motorist policies where enforcement would reduce the plaintiff's coverage below what the plaintiff would have had against an insured tort-feasor. *See, e.g., Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 356 N.E.2d 693 (policy clause purporting to exclude passenger from uninsured motorist coverage by limiting such coverage to named insured and spouse held unenforceable); *Scalf v. Globe Am. Casualty Co.* (1982), Ind.App., 442 N.E.2d 8, *trans. denied* (one-year limitation of action clause unenforceable).

■ Stewart also raises a privity argument, asserting that as a nonparty to the insurance contract between Nationwide and BeCraft, the contractual conditions are nonbinding. Although Stewart's failure to cite any authority for this position compels us to deem it waived for lack of cogent argument, we nevertheless find it enlightening in regard to the waiver argument. Certainly, as a nonparty to the contract, Stewart cannot be held to knowledge of its conditions to the same degree as a party would be. *Cf. Lumpkins v. Grange Mut. Companies* (1990), Ind.App., 553 N.E.2d 871 (insured barred from recovery for failure to comply with policy's time limit condition).

We find the following reasoning from *Noble* relevant and persuasive:

When notified of the litigation, [Nationwide made] no move ... to intervene therein ..., demand arbitration, or consent to the suit. This, we think, was unreasonable conduct on its part which we cannot condone.

An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not.... For this reason *we do not hesitate to place the burden of affirmative action upon the insurance company.* When notified of a claim it should investigate with reasonable dispatch; demand arbitration if that is its desire and settlement can't be reached; consent to suit against the uninsured motorist when notified of its pendency; or seek leave to intervene and present its contentions. Multiple litigation is not desirable. In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy.

*Indiana Ins. Co. v. Noble,* 148 Ind.App. at 323, 265 N.E.2d at 435 (our emphasis) (quoting *Allstate Ins. Co. v. Pietrosh* (1969), 85 Nev. 310, 454 P.2d 106) (refusing to enforce consent to sue condition). Thus, the court below was correct that insurance companies have a duty to "assist the policy holder from whom they took premiums...." Although the trial court's expression of that duty seems directed at Hawkeye, which took premiums from Stewart, we believe it sound policy to also impose a duty on an insurer faced with an uninsured motorist claim made by an injured passenger of its insured of bearing itself " 'with all good faith towards the claimant....' " *Huff,* 266 Ind. at 424, 363 N.E.2d at 991 (quoting *Aetna Ins. Co. v. Shryer* (1882), 85 Ind. 362); *accord Craft v. Economy Fire & Casualty Co.* (7th Cir. 1978), 572 F.2d 565, 570 (interpreting Indiana law). We cannot but conclude that a duty of good faith dealing certainly must include an obligation to inform such a claimant of conditions precedent in the insurance contract, the more so when the nonparty claimant has asked whether the

insurer requires any additional information in order to process the claim.

■ We cannot condone Nationwide's silence in regard to contractual conditions unknown to Stewart. Silence can amount to waiver where there is a duty to speak. *See Carsten v. Eickhoff* (1975), 163 Ind. App. 294, 301, 323 N.E.2d 664, 669, *trans. denied.* Where an insurer's silence causes prejudice to the insured, the insurer is said to have impliedly waived its rights. *See Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 671. As colorfully stated in a leading treatise, "modern decisions are not inclined to countenance the playing of games by insurance companies leading to policy defenses, and are prone to require a company to bring to its insured's attention any provision with which compliance is required." 8C Appleman, Insurance Law and Practice § 5083.65 (1981). We think requiring disclosure of the conditions precedent, in the facts and circumstances of this case, a prerequisite to their enforcement. Accordingly, we conclude that Nationwide waived its three contract conditions by failing to inform Stewart of them.

## CONCLUSION

Hawkeye, because it failed to intervene in Stewart's suit against Walker despite a realistic opportunity to do so, is bound by the default judgment. Nationwide, likewise not having intervened is likewise bound, and having remained silent as to conditions precedent in its insurance policy, will be deemed to have waived those conditions. Therefore, we reverse the trial court's denial of Stewart's motion for summary judgment, and remand with instructions to grant it.

SHARPNACK and SHIELDS, JJ., concur.