**FRANKENMUTH MUTUAL INSURANCE COMPANY, Appellant–(Garnishee Defendant below),**

v.

**Jena WILLIAMS by Next Friend Tracy STEVENS, Appellee– (Plaintiff below).**

**No. 43A03–9209–CV–286.**

Court of Appeals of Indiana, Third District.

June 15, 1993.

Rehearing Denied Sept. 30, 1993.

Timothy W. Woods, Shawn P. Ryan, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for appellant.

Jay A. Rigdon, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for appellee.

GARRARD, Judge.

This is an appeal from a grant of summary judgment in favor of Jena Williams.

The facts stipulated to the trial court in this case reveal that Frankenmuth Mutual Insurance Company (Frankenmuth) provided homeowners insurance coverage to Michael and Betty White during February and March of 1989. Beginning in the summer of 1988, Betty babysat children at their home. During February and March of 1989, Tracy Stevens hired Betty to babysit her two daughters, one of whom was Jena Williams. During one of the babysitting sessions at the White residence, Jena Williams was molested by Michael White. Michael subsequently pled guilty to child molestation.

On October 18, 1989, Jena, by her next friend Tracy Stevens, filed suit against Michael White alleging unlawful touching and battery. On June 21, 1990, a second count was added naming Betty, alleging that she was negligent in the care of Jena. Neither Michael nor Betty notified Frankenmuth that a lawsuit had been filed against them, nor did they forward any legal papers. Frankenmuth was notified that a claim of child molestation had been made against Michael White and on March 21, 1990 sent a reservation of rights letter to Michael concerning the incident. At the time that Frankenmuth sent its letter, however, it did not know that a lawsuit had been filed against him. Frankenmuth only became aware of the lawsuits prior to October 10, 1990, when it received a Subpoena Duces Tecum and a Non–Party Request for Production of Documents and/or Things from plaintiff. This request listed Michael and Betty White as defendants, but did not disclose to Frankenmuth the nature of the suit or whether Michael or Betty White had been served with process in the suit. On November 6, 1990, Frankenmuth sent a letter to Michael White's attorney requesting a copy of any suit papers, if a suit had been filed, so that it could determine coverage or its duty to defend. Frankenmuth never received any copies of notices, demands, or legal papers in connection with this occurrence.

On April 29, 1991, without Frankenmuth's knowledge, Betty White entered into a Consent to Judgment with plaintiff, granting judgment to plaintiff on Count II of the complaint, in the amount of $75,000.00. The Consent to Judgment was approved by the trial court on April 30, 1991. Simultaneous to signing the Consent to Judgment, plaintiff also signed a covenant not to execute against the personal assets of Betty White. This covenant left intact plaintiff's right to execute against any applicable insurance coverage. Count I, against Michael White, remains pending.

Subsequent to the consent judgment, plaintiff moved to add Frankenmuth as a garnishee defendant. On March 30, 1992, plaintiff and Frankenmuth both filed motions for summary judgment and on May 27, 1992 the trial judge entered summary judgment in favor of plaintiff concluding in part that Frankenmuth had been given sufficient notice and chose not to defend its insured against the lawsuit. The trial court held that Frankenmuth was therefore collaterally estopped from contesting its liability under the Consent to Judgment entered into between plaintiff and Betty White.

Frankenmuth presents several issues for review. We find, however, that the trial court was incorrect in concluding that notice was sufficient in this case and we therefore reverse its grant of summary judgment on that basis.

When reviewing a grant of summary judgment our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Liberty Mutual Insurance Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, 899–90, *trans. denied.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.*

In this case the facts before the trial court were stipulated by the parties. The question at issue here then turns on whether these undisputed facts demonstrate that Frankenmuth had sufficient notice, as a matter of law, to sustain a judgment based upon a finding of collateral estoppel. We find that they did not.

Collateral estoppel, a branch of res judicata characterized as "issue preclusion," involves a prior adjudication of a particular issue which is binding on the parties and their privies in a later lawsuit. *Id.* The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party so long as the insurer had (1) notice of such litigation, and (2) an opportunity to control its proceedings. *Hoosier Casualty Co. v. Miers* (1940), 217 Ind. 400, 27 N.E.2d 342, 344; *Id.* Both elements are required before collateral estoppel will bind an insurance company. In this case we are concerned with the first element.

In general, the function of notice is to provide forewarning of an event. 58 Am.Jur.2d *Notice* § 2 (1989). In the insurance context this must generally be "actual" notice. 44 Am.Jur.2d *Insurance* § 1588 (1982). In Indiana, this requirement is met if the insurance company has knowledge of facts which would be sufficient to lead a reasonably prudent person to inquire about the matter. *Johnson v. Payne* (1990), Ind.App., 549 N.E.2d 48, 51–52, *trans. denied.* If such facts exist, an insurance company is obligated to undertake a reasonable investigation to ascertain the truth. *Id.* at 52. The insurance company will be considered to have knowledge of any information that this reasonable investigation would have disclosed. *Id.; see also* 58 Am.Jur.2d *Notice* § 5 (1989).

In the context of collateral estoppel, facts sufficient to satisfy this notice requirement generally contain several types of information. First, it must alert the insurance company that a lawsuit has already been filed against one of its insured. *See, e.g., State Farm Mutual Insurance Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918, 923 (insurance company had notice of the plaintiff's action against him); *Indiana Insurance Co. v. Noble* (1970), 148 Ind.App. 297, 265 N.E.2d 419, 436 (insurance company was fully advised of the filing and pendency of the suit). Such notice would obviously contain the name of its insured. Second, adequate notice must "allow the insurer appropriate time to intervene and realistically assert any defenses which may exist." *Vernon Fire and Casualty Insurance Co. v. Matney* (1976), 170 Ind.App. 45, 351 N.E.2d 60, 66. Third, in order for an insurance company to know that it must intervene, there must be some kind of information communicated that would alert the insurance company that its policy with, or coverage of, its insured may be implicated and that it could be held liable on the underlying judgment. *See Stewart v. Walker* (1992), Ind.App., 597 N.E.2d 368, 372.[1] Such information would alert the insurance company that it should inquire further concerning the matter and would obligate it to undertake a reasonable investigation. Without this kind of information, the law will not charge an insurance company with the knowledge that it could be held financially responsible in the underlying suit, and that it proceeds

---

1. In *Stewart,* the insurance company received a copy of the complaint filed in the underlying action. The court in that case stated that "receiving a copy of a complaint filed by its insured against a purportedly uninsured motorist, early enough to allow intervention, suffices to inform the insurer that its interests may be in jeopardy, and therefore providing an instigation ... [to] enter its appearance in the trial court." *Id.*

at its own risk if it chooses to ignore the litigation.

In the case at bar, Frankenmuth was not aware that Michael or Betty White had been sued by Williams until it received the Subpoena Duces Tecum and Non–Party Request for Production of Documents. No other information was received by Frankenmuth, either by request or otherwise. We therefore must determine if the document request filed by plaintiff is enough to satisfy the notice requirement outlined above.[2]

The document request clearly states the names of both Michael and Betty White and indicates that there had been a lawsuit filed against them. The request was received by Frankenmuth sometime before October 10, 1990, over six months before the Consent to Judgment was entered into between Betty White and plaintiff. This gave Frankenmuth enough time within which to intervene. The document request, however, did not contain any further information concerning the suit or the nature of the allegations contained in it. There was nothing contained therein that would have alerted Frankenmuth that the lawsuit against Betty White may have affected its policy with, or coverage of, Betty. A mere request for copies of insurance policies, amendments, and riders is insufficient to alert Frankenmuth that it may have been liable to indemnify Betty White if she was held liable in the suit. We therefore determine that this bare request for documents was insufficient to comprise the "notice of the litigation" required before an insurance company will be bound by the results of litigation involving its insured.

In addition, we note that we will not require an insurance company to investigate every lawsuit that it is made aware of involving one of its insured. To hold that this bare document request satisfies inquiry notice would be tantamount to holding that an insurance company must investigate *all* lawsuits involving its insured no matter how unrelated the suit may be. This the law does not require. The burden is generally upon the parties to the suit to give notice that is sufficient to alert the insurance company to its potential hazard. That is to say, the parties bear the risk of non-notification.[3]

We reverse the grant of summary judgment entered by the trial court in favor of plaintiff and remand for further proceedings consistent with this opinion.

Reversed and remanded.

STATON, J., concurs.

CHEZEM, J., concurs in result and files separate opinion.

CHEZEM, Judge, concurring in result.

I concur in result because information such as a *subpoena duces tecum* and a non-party request for production of documents should serve to put an insurance company on alert that further investigation is warranted when the caption of the parties includes the name of their insured.

The material undisputed facts show that Frankenmuth received a *subpoena duces tecum* and a non-party request for production of documents bearing the name of Michael and Betty White, Frankenmuth policyholders, and the party suing them. Approximately one month after receiving

---

**2.** We note that prior to learning of the lawsuit filed against Betty White, Frankenmuth was notified of the child molestation claim levied against Michael White. Notice of this claim, however, was not sufficient to inform Frankenmuth of the nature of the allegations made against Betty White in the subsequent suit as there was no indication to Frankenmuth that the molestation charge was the basis of the suit. We will not require insurance companies to guess the nature of a lawsuit from previous incidents involving its insured without some information indicating that the previous incident(s) are related to the suit.

**3.** We note that in this case Frankenmuth did undertake to correspond with the attorney for Michael White on November 6, 1990, requesting copies of all legal papers connected with the suit. This was gratuitous action on the part of Frankenmuth and does not alter the deficient notice in this case. Frankenmuth may not be penalized for mere prudence or caution. Had the attorney responded to the inquiry with enough information to alert Frankenmuth to its risk in the underlying action, a different question might be presented.

these documents, Frankenmuth sent a letter to the Whites' attorney stating that it may not have a duty to defend "if a suit is filed." The letter also asked the attorney to send Frankenmuth a copy of the suit if one was filed. The attorney never sent a copy of the suit against the White's to Frankenmuth. It was not until Betty White had settled the suit with respect to the claim against her, and the plaintiff agreed to seek payment from Frankenmuth, that Frankenmuth specifically learned of the complaints against the Whites.

I would find that the documentation was sufficient to alert an insurance company that investigation may be necessary. I would also find that Frankenmuth met their obligation to investigate when it sent the letter to the Whites' attorney, requesting a copy of any lawsuit filed against their insured.