WESTFIELD INSURANCE COMPANY,
Appellant–Applicant for
Intervention,

v.

David E. AXSOM, Appellee–Plaintiff.

and

Louise A. Beard, Defendant.

No. 03A01–9703–CV–102.

Court of Appeals of Indiana.

Aug. 20, 1997.

Mark R. Smith, Smith & Bemenderfer, Indianapolis, for Appellant–Applicant for Intervention.

Keith Guthrie, Elizabethtown, for Appellee–Plaintiff David E. Axsom.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this case of first impression, we are asked to decide whether an underinsured motorist insurance carrier has the right to intervene in an action between the carrier's insured and the underinsured motorist. David E. Axsom ("Axsom") filed suit against Louise A. Beard ("Beard")[1] for personal injuries Axsom sustained when struck by Beard's automobile. Axsom notified Westfield Insurance Company ("Westfield") of his intention to pursue an underinsured motorist claim under Westfield's policy insuring Axsom's employer. Westfield filed a Motion for Leave to Intervene of right which the trial court denied. Westfield now appeals.

We reverse and remand with instructions.

### FACTS

On November 27, 1995, Axsom, a pedestrian, was struck by an automobile owned and operated by Beard. At the time of the accident, Beard had automobile insurance coverage through Farm Bureau Insurance Company with a bodily injury liability limit of $250,000.00 per person and $500,000.00 per accident. The accident occurred within the scope of Axsom's employment by Adam Guernsey, d/b/a/ United Plumbing & Heating. Guernsey owned an automobile insurance policy with Westfield which included underinsured motorist coverage limited to $500,000.00 per accident.[2]

Axsom filed a tort action against Beard on January 21, 1997. Axsom placed Westfield on notice of his intent to pursue an underinsured motorist claim under Guernsey's policy and provided Westfield with a copy of his complaint. Westfield then moved to intervene pursuant to Indiana Trial Rule 24(A)(2). The trial court denied that motion, and West-

field now brings this permissive interlocutory appeal.

### DISCUSSION AND DECISION

#### Standard of Review

Indiana cases interpreting Indiana Trial Rule 24(A)(2) have adopted the three-part test followed by federal courts in interpretation of its double, Rule 24(a)(2) of the Federal Rules of Civil Procedure. As a matter of law, this test requires that intervenors show (1) an interest in the subject of the action, (2) disposition of the action may as a practical matter impede protection of that interest, and (3) representation of the interest by existing parties is inadequate. *Llewellyn v. Beasley*, 415 N.E.2d 789, 792 (Ind.Ct.App. 1981). A court must also consider the timeliness of the request in deciding whether or not to grant a motion to intervene. *Id.* Apart from agreement on the test which must be met for intervention of right, our courts have not agreed on what facts or circumstances are necessary to satisfy the test. *Id.* Thus, a determination of whether the factual situation satisfies Trial Rule 24(A)(2) is largely committed to the sound discretion of the trial court. *Id.*

#### Intervention of Right

Westfield argues that the trial court abused its discretion when it denied Westfield's motion to intervene. Specifically, Westfield contends that, as in uninsured motorist actions, intervention should be allowed in underinsured motorist actions as a matter of right. Axsom counters that Westfield should not be entitled to intervene due to the conflict of interest created by Westfield's position as Axsom's insurer and, further, that Westfield's interests are adequately represented by the existing parties to the lawsuit.

There was once a disparity in Indiana law as to whether intervention of

1. Appellate Rule 2(B) provides that all parties of record in the trial court shall be parties on appeal. While Beard's name appears in the caption, she did not participate in this appeal.

2. Indiana Code § 27-7-5-4(b) provides:
   For the purposes of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, in-

cludes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident. . . .

right by the insurer would be permitted in actions against uninsured motorists. *Compare Smith v. Midwest Mutual Ins. Co.*, 154 Ind.App. 259, 289 N.E.2d 788 (1972) (intervention not permitted and judgment of first action is not binding on insurer) *with Indiana Ins. Co. v. Noble*, 148 Ind.App. 297, 265 N.E.2d 419 (1970) (intervention is preferred to avoid multiplicity of suits, and judgment of action is binding on insurer if notice is provided). We later resolved that disparity in favor of intervention of right in *Vernon Fire and Cas. Ins. Co. v. Matney*, 170 Ind. App. 45, 49, 351 N.E.2d 60, 64 (1976). In *Matney*, we stated:

> [T]he cumulative effect of the spirit of the Indiana Trial Rules, the interests of justice, the avoidance of multiple litigation and the conservation of judicial time compels our conclusion to allow intervention by the insurer.

*Id.* Thus, we held that "an insurer has the right to intervene and have a full and complete adjudication of the issues at a single trial." *Id.* at 51, 351 N.E.2d at 64; *see also Panos v. Perchez*, 546 N.E.2d 1253 (Ind.Ct. App.1989); *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591 (Ind.Ct.App.1982). If the insurance carrier receives sufficient notice of the action between the insured and the uninsured motorist and chooses not to intervene, the resulting judgment is binding upon the carrier in a subsequent action with its insured. *Matney*, 170 Ind.App. at 52–53, 351 N.E.2d at 66. However, failure to intervene will not deprive the insurer of defenses based on the contract of insurance. *Stewart v. Walker*, 597 N.E.2d 368, 370–71 (Ind.Ct.App. 1992).

In reaching our conclusion in *Matney*, we reasoned that although a judgment against an uninsured motorist, if no intervention were allowed, would not be binding on an insurer, the judgment on liability issues would present a "most formidable barrier" for the insurer to overcome in a separate and subsequent action. *Matney*, 170 Ind.App. at 50, 351 N.E.2d at 64. Although we conceded in *Matney* that a conflict of interest is created by the insurer's intervention, we determined such conflict to be "ultimately un-

avoidable." *Id.* at 51, 351 N.E.2d at 65. If the insurer were not entitled to intervene:

> Matney would be forced to obtain a judgment against [the uninsured motorist] and then institute an action against [the insurer]. At that time, Matney would be required to retry the liability and damage aspects of the original action and thus have the exact same conflicts of interest and ethical problems as was presented in the original action.

*Id.*

Further "intervention logically leads to the prevention of conflicting results in the outcome of two actions to decide the identical questions." *Id.* at 50, 351 N.E.2d at 64. If intervention were not allowed, the insurer could be forced to relitigate issues of liability and damages which, having been determined in the action between the insured and the underinsured, would be controlled by *stare decisis*. *See id.* at 50, 351 N.E.2d at 64 (citing *Martin v. Travelers Indem. Co.*, 450 F.2d 542, 554 (5th Cir.1971)). Given those considerations, we concluded that the avoidance of multiple lawsuits and the possibility of conflicting results are "paramount" to the conflict of interest created by intervention. *Matney*, 170 Ind.App. at 52, 351 N.E.2d at 66.

Axsom misinterprets an insurer's duty of good faith and fair dealing. While intervention of right may create a conflict of interest, that conflict does not necessarily result in a breach of Westfield's duty to act in good faith. In *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind.1993), our supreme court recognized a cause of action for the tortious breach of an insurer's duty of good faith. However, the court also acknowledged that the relationship that exists between an insurer and its insured may be adversarial, fiduciary or at arms-length. *See id.* at 518. The court explained:

> We note that this new cause of action does not arise every time an insurance claim is erroneously denied. For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good

faith. This is so even if it is ultimately determined that the insurer breached its contract. *That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana.*

*Id.* at 520 (emphasis added).

■ We can discern no compelling reason to distinguish between uninsured and underinsured motorist actions for purposes of intervention. The factors considered in *Matney* should also apply in underinsured motorist actions. Since a conflict of interest is ultimately unavoidable, the parties should not be required to relitigate issues of liability and damages that have been decided in the underlying tort action.

Still, Axsom argues that Westfield has not satisfied the requirements of Indiana Trial Rule 24, which provides in relevant part:

(A) Intervention of Right. Upon timely motion anyone shall be permitted to intervene in an action:

\*　　\*　　\*　　\*　　\*　　\*

(2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.

T.R. 24(A)(2).

■ Under the terms of Axsom's underinsured motorist policy, Westfield faces potential underinsured motorist coverage exposure of $250,000.00, representing the difference between Farm Bureau's and Westfield's policy limits. Questions involving liability and damages will be determined in Axsom's action against Beard. As we stated in *Matney:*

Clearly, the basis of the action by Matney against [his insurer] is contractual, However, any action on the contract is inseparably tied to the legal liability of [the uninsured motorist]. Therefore, the initial action in which the liability of [the uninsured motorist] is determined in but the first link in an unbroken chain leading to the contractual liability of [Matney's insurer].

*Matney,* 170 Ind.App. at 49–50, 351 N.E.2d at 64. We conclude that Westfield has, upon timely motion, shown that it has an interest in Axsom's action against Beard and that its ability to protect that interest will be impaired or impeded if intervention is denied.

Accordingly, this case turns finally on whether Westfield has demonstrated that its interests are not adequately represented by the existing parties to the lawsuit. Axsom contends that although similar in some respects, uninsured and underinsured motorist claims are distinct for purposes of determining the proper role of the underinsured carrier in the underlying litigation. In particular, Axsom argues that Westfield should not be entitled to intervene because Beard is represented by counsel provided by her own insurer, a situation which does not generally occur in uninsured motorist actions. *See e.g., Stewart,* 597 N.E.2d at 368 (uninsured motorist not represented by counsel). We are not persuaded by this argument. "Representation" as used in Trial Rule 24(A)(2) refers not only to adequate legal advocacy but also to adequate representation of a party's interests, rights or claims. The mere presence of Farm Bureau's attorney in Axsom's action against Beard does not, in itself, defeat Westfield's motion for intervention of right.

The fact that two companies insure a risk arising from the same motorist's claim does not mean that their interests are coextensive. Whether the interest of an insurance carrier providing underinsured motorist coverage is adequately represented by another company providing liability coverage will depend on the size of the loss relative to each carrier's coverage and exposure. In some cases, the liability coverage relative to the size of the claim will clearly be adequate, and the underinsured carrier will elect not to participate in the action. In other cases, where liability coverage may be inadequate, the divergence of interests will be readily apparent.

While Axsom claims to have suffered "severe personal injuries," the true magnitude of the loss cannot be determined from the notice pleadings. In the early stages of litigation, it may be difficult for the underinsured motorist carrier and the trial court to

evaluate the merits of intervention. *See* Ind. Trial Rule 7(A)(2) (complaints seeking damages for personal injury or death shall not include dollar amount in demand). However, we think the underinsured motorist insurance carrier is usually in the best position to analyze the risk, evaluate its exposure and determine whether its interests are adequately represented in the lawsuit. Here, Westfield's interests may be adequately represented to the extent that Beard's liability does not exceed her policy limit of $250,-000.00. However, once that limit has been exhausted, neither Beard nor Farm Bureau has an interest in limiting Westfield's liability. Given the disparity in levels of coverage and exposure between the two policies, we conclude that Westfield has shown that its interests are not adequately represented by the existing parties to the lawsuit and that it is entitled to intervention.

### CONCLUSION

Applying the principles articulated in *Matney* and the requirements of Indiana Trial Rule 24, we conclude that the insurer has the right to intervene in an action between its insured and an underinsured motorist.[3] Moreover, the insurer will be bound by the judgment if, having received notice that the insured intends to pursue a claim against his underinsured motorist policy, the insurer chooses not to intervene. *See Stewart,* 597 N.E.2d at 370-71 (judgment binding if insurer receives notice of uninsured motorist action). Accordingly, we reverse and remand to the trial court with instructions to grant Westfield's motion for leave to intervene in Axsom's suit against Beard.

Reversed and remanded with instructions.

BAKER and FRIEDLANDER, JJ., concur.

---

**3.** Other jurisdictions have granted the insurer the right to intervene in an underinsured motorist action. *See e.g., Fisher v. Allstate Ins. Co.,* 85 Wash.App. 594, 933 P.2d 1094 (1997); *Haas v.*

*Freeman,* 236 Kan. 677, 693 P.2d 1199 (1985). *But see State ex rel. State Auto Mut. Ins. Co. v. Steptoe,* 190 W.Va. 262, 438 S.E.2d 54 (1993).