961 P.2d 350 (1998)
136 Wash.2d 240
Kelly FISHER, Respondent,
v.
ALLSTATE INSURANCE COMPANY, Petitioner.
No. 65491-3.
Supreme Court of Washington, En Banc.
Argued February 25, 1998.
Decided September 3, 1998.
*351 Reed, McClure, William Hickman, Michael S. Rogers, Seattle, Johnson, McLean, Riccelli & Devlin, Peter J. Johnson, Spokane, for Petitioner.
Milton G. Rowland, Spokane, for Respondent.
Bryan P. Harnetiaux, Harbaugh & Bloom, Gary N. Bloom, Debra Stephens, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
Burgess, Fitzer, Leighton & Phillips, Timothy R. Gosselin, Tacoma, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
SANDERS, Justice.
Is an underinsurance motorist carrier bound by the results of an arbitration between its insured and the tortfeasor when the carrier did not participate but had notice and an opportunity to intervene in the action? Yes.
The trial court entered partial summary judgment in favor of Kelly Fisher, the insured, holding Allstate Insurance Company, Fisher's insurer, was bound by the arbitration award against the tortfeasor. The Court of Appeals affirmed, relying on Finney v. Farmers Ins. Co., 21 Wash.App. 601, 586 P.2d 519 (1978), aff'd, 92 Wash.2d 748, 600 P.2d 1272 (1979), holding an underinsured carrier is bound by the resulting judgment against a tortfeasor when an insurer has notice and an opportunity to intervene. Fisher v. Allstate Ins. Co., 85 Wash.App. 594, 933 P.2d 1094, review granted in part, denied in part by 133 Wash.2d 1015, 946 P.2d 401 (1997). The parties present two issues: (1) *352 was Finney correctly decided and, if so, (2) does Finney apply here. We affirm concluding Finney was correctly decided and governs this case.

I. Facts
Kelly Fisher was seriously injured in a motorcycle accident in northern Idaho. Susan Allman, the driver of the car that struck the motorcycle, had liability coverage with a limit of $125,000. The operator of the motorcycle had a policy with Allstate which had an underinsured motorist (UIM) coverage limit of $25,000.
Both the tortfeasor's insurer and Allstate refused to tender their policy limits to Fisher. Fisher sued the offending driver, Allman, in Idaho. Trial was set for September 1994. Fisher also filed suit against Allstate for UIM coverage in Spokane County Superior Court. That case was scheduled for trial in April 1994 but was continued to October 1994, one month after the scheduled trial date in the Idaho case.
Early on, Allstate knew of Fisher's suit against the tortfeasor but Allstate elected not to participate. The parties conducted a joint deposition and Allstate was invited to participate in another deposition taken in Minnesota. Sometime in September 1994 Allstate was notified Fisher and the tortfeasor were in arbitration. The arbitrator awarded $236,000 in damages to Fisher.
Upon receiving the arbitration award, well in excess of the tortfeasor's coverage limit, Fisher demanded Allstate pay its $25,000 UIM limit. Allstate refused. Fisher then amended her complaint to include a bad faith claim and moved for summary judgment. The trial court entered partial summary judgment in favor of Fisher, finding that Allstate was bound by the arbitration. Allstate appealed and the Court of Appeals affirmed in a published opinion. Fisher, 85 Wash.App. 594, 933 P.2d 1094.
After the Court of Appeals published Fisher, Allstate noticed Fisher had not reduced her arbitration award to final judgment. Allstate then petitioned for review of the Court of Appeals decision, and we granted review. Fisher v. Allstate Ins. Co., 133 Wash.2d 1015, 946 P.2d 401 (1997).

II. Standard of Review
Summary judgment is appropriate where no genuine issues of material fact exist, and the nonmoving party is entitled to judgment as a matter of law. The court considers all facts and reasonable inferences in a light most favorable to the nonmoving party. CR 56(c); Failor's Pharmacy v. Department of Soc. & Health Servs., 125 Wash.2d 488, 493, 886 P.2d 147 (1994).

III. Analysis
UIM insurance provides a second layer of excess insurance coverage that "floats" on top of recovery from other sources for the injured party. Blackburn v. Safeco Ins. Co., 115 Wash.2d 82, 87, 794 P.2d 1259 (1990) (citing Elovich v. Nationwide Ins. Co., 104 Wash.2d 543, 549, 707 P.2d 1319 (1985)). Coverage eligibility depends upon the insured's demonstrating he or she is "legally entitled to recover" in tort from the underinsured motorist. RCW 48.22.030(2). The insurer must pay its insured's uncompensated damages "`until the underinsurance policy coverage is exhausted or until the insured is fully compensated, whichever occurs first.'" Mencel v. Farmers Ins. Co., 86 Wash.App. 480, 484, 937 P.2d 627 (1997) (quoting Hamilton v. Farmers Ins. Co., 107 Wash.2d 721, 723, 733 P.2d 213 (1987)).
Parties contract with UIM insurers to provide this additional layer of compensation. As a result, the court must consider the contractual relationship between the insurer and the insured when deciding UIM issues. Johnson v. Farmers Ins. Co., 117 Wash.2d 558, 566, 817 P.2d 841 (1991) (citing Blackburn, 115 Wash.2d at 88, 794 P.2d 1259). The court, the Legislature, and the contracting parties impose contractual duties upon the insurer and insured. RCW 48.01.030; Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986). Such duties include in good faith "giv[ing] `equal consideration' to the insured's interests."[1]Tank, 105 Wash.2d at 385-86, 715 *353 P.2d 1133 (quoting Tyler v. Grange Ins. Ass'n, 3 Wash.App. 167, 177, 473 P.2d 193 (1970)).
Although the relationship of the insurer and insured is contractual, the source of the obligation to offer UIM coverage is statutory. The Washington underinsured motorist statute requires UIM insurance to be "provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles...." RCW 48.22.030(2). The statute embodies a strong public policy to ensure the availability of a source of recovery for an innocent automobile-accident victim when the responsible party does not possess adequate liability insurance. Bohme v. PEMCO Mut. Ins. Co., 127 Wash.2d 409, 413, 899 P.2d 787 (1995); Finney v. Farmers Ins. Co., 92 Wash.2d at 751, 600 P.2d 1272.

A. Finney was correctly decided
The first issue is whether Finney should be overruled. The Finneys' daughter died in an automobile accident. Finney v. Farmers Ins. Co., 21 Wash.App. at 603, 586 P.2d 519. The Finneys sought recovery from Farmers Insurance Company under the uninsured motorist (UM) provision of their insurance policy. They also brought a wrongful death action against the driver and alleged owner of the car in which their daughter was riding. Id. at 604, 586 P.2d 519. The Finneys settled their claim against the driver. The remainder of the action went to trial and resulted in a judgment against the car owner. Id. at 605, 586 P.2d 519. The car owner's insurer denied coverage and the Finneys were unable to collect the judgment. Id.
The Finneys then brought an action against their own insurer to recover damages under the UM provisions. Id. Among other defenses Farmers contended it was not bound by the judgment because "(1) it was not a party to that action and collateral estoppel [did] not apply," and (2) provisions of its policy required any judgment regarding liability and damages between the insurer and insured be resolved by arbitration. Id. at 616, 586 P.2d 519. Farmers conceded it had a right to intervene in the action between the insured and the tortfeasor but argued its failure to do so did not render it bound by the findings, conclusions, or judgment. Id. at 617, 586 P.2d 519.
Division III of the Court of Appeals bound Farmers by the resulting judgment. The court reasoned that "Farmers had to know that this determination [of liability and damages between its insured and the tortfeasor] might be crucial to their liability...." Id. at 618, 586 P.2d 519. The court also found Farmers was not entitled to utilize the arbitration provision because it had notice and an opportunity to participate in the action. Id. at 619, 586 P.2d 519.
We unanimously affirmed Finney, 92 Wash.2d 748, 600 P.2d 1272. Although we did not explicitly address whether an insurer was bound by a previous judgment, we noted the issue had been either "thoroughly and adequately addressed by the comprehensive opinion of the Court of Appeals or [had] been abandoned by petitioner for lack of citation to authority." 92 Wash.2d at 750, 600 P.2d 1272. This issue was diligently briefed by both parties before this court as well as the Court of Appeals and was specifically raised in the petition for review.
Finney established a rule of law which binds this court under stare decisis. We thus affirm an insurer will be bound by the "findings, conclusions and judgment" entered in the action against the tortfeasor when it has notice and an opportunity to intervene in the underlying action against the tortfeasor, id. at 618, 586 P.2d 519, and see no compelling reason to depart from this precedent. Moreover our holding articulates the rule applied in a majority of jurisdictions in both the UM and UIM contexts.[2]Id. at *354 617, 586 P.2d 519 (citing State Farm Mut. Auto. Ins. Co. v. Christensen, 88 Nev. 160, 494 P.2d 552 (1972) (default judgment); Dominici v. State Farm Mut. Auto. Ins. Co., 143 Mont. 406, 390 P.2d 806 (1964) (default judgment); Wells v. Hartford Accident & Indem. Co., 459 S.W.2d 253 (Mo.1970); State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig, 364 S.W.2d 343, 95 A.L.R.2d 1321' (Mo.App.1963); Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606 (1969); Terzian v. California Cas. Indem. Exch., 42 Cal.App.3d 942, 117 Cal.Rptr. 284 (1974)).
The rule is further supported by the UIM statute itself. RCW 48.22.030(2) requires all new and renewed policies to provide UIM coverage to those "who are legally entitled to recover damages from owners or operators of underinsured motor vehicles...." RCW 48.22.030(2) (emphasis added). The typical underinsured insurance contract parallels the statutory language, providing: "`We will pay damages which an insured is legally entitled to recover from the owner or operator of an [underinsured motor vehicle].'" Employers Mut. Cos. v. Nordstrom, 495 N.W.2d 855, 858 (Minn.1993) (alterations in original). As the Minnesota Supreme Court noted, a tort judgment against the tortfeasor establishes conclusively the damages to which the insured is "legally entitled." Not only must the UIM insurer ordinarily pay because of its contractual obligations, but such a duty arises from statutory law as well. Id.' at 858-59. Once an insured establishes she is "legally entitled" to recover from the tortfeasor, the UIM carrier becomes obligated to pay the judgment less the insurance recovery from the tortfeasor.[3]
Considerations of fairness and the avoidance of redundant litigation are also served by this holding. Allstate argues Finney should be overruled because privity does not exist between the third-party tortfeasor's carrier and the UIM carrier to justify the application of collateral estoppel. Allstate is correct that the requisites of collateral estoppel are absent; however, while courts recognize technical privity is absent, they nevertheless apply estoppel principles, concluding *355 there is a sufficient identity of interests between the UIM insurer and the tortfeasor.
The possibility of anomalous results, redundant litigation, as well as preventing insurers from picking and choosing their judgments justifies application of such principles provided notice and an opportunity to intervene are afforded to the insurer. Likewise, the benefits of joining the UIM insurer and tortfeasor in a single action outweigh any conflict between an insurer and insured as well as the injection of insurance into the trial. Through joinder of the UIM insurer
society is benefitted by the efficiency of judicial economy. The insured is benefitted by the elimination of multiple suit costs. The underinsurer is benefitted by the elimination of anomalous results that could occur if the tort and contract actions were split. Last, the underinsurer may reap the additional advantage of a more zealous defense.
J. Sue Myatt, Settlement Procedures in Underinsured Motorist Cases: The Underinsurer's Dilemma Between Preserving the Insurer's Subrogation Right and Protecting the Insured's Settlement Right, 14 J. Corp. L. 175, 184 (1988). Forcing the insured to relitigate liability and damages against the UIM carrier only fosters inconsistent judgments and additional delay and expense for the insured. See Vernon Fire & Cas. Ins. Co. v. Matney, 170 Ind.App. 45, 351 N.E.2d 60, 63 (1976); Haas v. Freeman, 236 Kan. 677, 693 P.2d 1199, 1204 (1985); Zirger v. General Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065, 1072 (1996); Heisner v. Jones, 169 N.W.2d at 611-12 (1969); Allstate Ins. Co. v. Pietrosh, 85 Nev. 310, 454 P.2d 106, 111 (1969); Henry A. Hentemann, Underinsured Motorist Coverage; A New Coverage with New Problems, 50 Ins. Couns. J. 365, 372 (1983). Relitigation provides an unwarranted benefit to insurance companies as well. A UIM carrier could deny a claim, wait until litigation between the insured and tortfeasor was complete, and then assert its insured is collaterally estopped if the damage award is low, but avoid the damage award by relitigating if considered too high.
Additionally, an inevitable conflict exists between the insurer and insured, whether in the first suit or the second. Such conflict inures in the unique nature of UIM coverage, as the UIM insurer's relationship with its insured is by nature adversarial and at arm's length. It cannot be extinguished by requiring the insured to relitigate. See Westfield Ins. Co. v. Axsom, 684 N.E.2d 241, 243 (Ind. Ct.App.1997) (Conflict is "`ultimately unavoidable.'" (quoting Matney, 351 N.E.2d at 65). If an insurer were not allowed to intervene, the exact same conflicts of interest would exist in the second suit against the insurer); Heisner, 169 N.W.2d at 611 (no difference exists between this situation and the common situation where a carrier has coverage on two insureds involved in the same accident); Briggs v. American Family Mut. Ins. Co., 833 P.2d 859, 863 (Colo.Ct. App.1992) (many of the same conflicts would exist in the separate action against the insurer as in a consolidated action where the insured and the insurer disagree on the amount of the damages).
Widely adopted among state courts the Finney rule binds an insurer to a judgment against the tortfeasor only if the insurer has been afforded notice and an opportunity to intervene in the underlying action. See footnote 2, supra. We acknowledge that this rule is a modification of the technical requirements for privity. However, we are convinced the underlying action adequately protects the UIM carrier's interests to adequately serve the purposes of collateral estoppel. Further, considerations of fairness and avoidance of redundant litigation are likewise advanced.

B. Finney governs this case
The second issue is whether Finney applies here. Allstate argues Fisher did not comply with Finney for two reasons. First, Allstate argues Fisher failed to provide Allstate with sufficient notice of the arbitration with the tortfeasor. Second, Allstate contends Fisher did not reduce the arbitration award to a final judgment.
Allstate contends it did not receive sufficient notice to be bound by the arbitration between Fisher and the tortfeasor. But Allstate misconstrues Finney. Notice of the *356 arbitration is not required. Rather, an insured must inform the insurer when he or she files suit against the tortfeasor. See Finney, 21 Wash.App. at 618, 586 P.2d 519; Mencel, 86 Wash.App. at 486, 937 P.2d 627; Wear v. Farmers Ins. Co., 49 Wash.App. 655, 659, 745 P.2d 526 (1987). The inquiry in Finney was whether the insurer was "fully apprised of plaintiffs' efforts to obtain recompense" from the tortfeasor. Finney, 21 Wash.App. at 618, 586 P.2d 519. The court determined the insurer knew a suit was filed and that the insureds were attempting to prove liability. The court reasoned the insurer "had to know that this determination [of the tortfeasor's liability] might be crucial to their liability under the uninsured motorist provisions of their policies." Id.
Similarly, other jurisdictions hold to the same rule in other contexts such as settlements. Notice of a suit is required, rather than notice of a pending settlement. This is because the possibility of settlement or arbitration is implicit in the context of litigation. See, e.g., Southern Guar. Ins. Co. v. Welch, 570 So.2d 654 (Ala.1990) (insurer had sufficient notice of likelihood of settlement to be bound); Sutch v. State Farm Mut. Auto. Ins. Co., 672 A.2d 17 (Del.Super.Ct.1995) (insured bound insurer to arbitration between insured and tortfeasor); Champion Ins. Co. v. Denney, 555 So.2d 137, 139 (Ala.1989) (default judgment obtained by insured against tortfeasor was conclusive as to liability and damages).
Allstate concedes it had notice of the case against the tortfeasor months before it went to arbitration.[4] Allstate's counsel attended a deposition taken in the case and it was invited to participate in a second deposition. Sometime in September 1994 Allstate was notified the insured and tortfeasor were actually in arbitration.[5]
Allstate stresses that Fisher filed suit against both Allstate and the tortfeasor in separate actions and that, originally, suit against Allstate was to proceed first to trial. As a result Allstate argues it justifiably declined to intervene. However, Finney and the majority of jurisdictions hold if suit is filed by the insured against the tortfeasor and the insurer declines to intervene, it will be bound by the resulting judgment. This rule is not qualified by reliance upon trial scheduling. See, e.g., Briggs, 833 P.2d at 864 ("American argues, however, that it relied on the fact that Briggs brought a separate contract action against American to determine the amount of benefits and, thus, did not think it necessary to intervene in the tort action. Even if we assume that American did so rely, its asserted good faith is not relevant to the question of due process. Due process requires notice and an opportunity to intervene. Here, American had both.").
Further, Allstate still had the opportunity to seek intervention after it realized its suit with Fisher would not be the first to proceed to trial. Allstate explains the trial date was changed around April 25, 1994 although the arbitration hearing did not begin until September 19, 1994. Allstate therefore had five months to seek intervention in the action. Even if Allstate had a defense based on trial scheduling, it must at least attempt to protect its interests once it realized the Idaho case would proceed first. Instead Allstate did nothing. Allstate received sufficient notice of Fisher's action against the tortfeasor to satisfy Finney.
Allstate also argues the Finney rule should not apply because Fisher failed to reduce her arbitration award to a final judgment. Despite ample opportunity (almost four years of litigation), neither party to this case noticed the arbitration ruling hadn't ever been reduced to judgment until after the Court of Appeals opinion was published. Allstate only recently contested the issue in its petition for review. This court does not *357 generally consider issues raised for the first time in a petition for review. State v. Halstien, 122 Wash.2d 109, 130, 857 P.2d 270 (1993). Allstate presents no compelling reason why the court should address the issue here. Had Allstate asserted this defense earlier, Fisher could have sought to reduce the arbitration award to judgment; however, we decline to consider an issue first raised in a petition for review.[6]
Finney governs this case and we accordingly affirm the Court of Appeals decision on coverage, awarding costs on appeal plus reasonable attorney's fees to Fisher pursuant to Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 52, 811 P.2d 673 (1991).
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON and TALMADGE, JJ., concur.
ALEXANDER, Justice, (dissenting).
The majority, relying on its reading of Finney v. Farmers Ins. Co., 21 Wash.App. 601, 586 P.2d 519 (1978), aff'd, 92 Wash.2d 748, 600 P.2d 1272 (1979), concludes that the Allstate Insurance Company is bound by the results of an arbitration proceeding between its insured, Kelly Fisher, and an alleged tortfeasor. It reaches this conclusion, notwithstanding the fact that Allstate did not participate in the arbitration proceeding. I disagree with the majority's holding for the reasons that Allstate (1) had insufficient notice that Fisher was engaged in arbitration with the tortfeasor, and (2) was unable to intervene in the arbitration proceeding. That being the case, it should not be bound by the arbitrator's ruling.
In Finney, Division Three of the Court of Appeals concluded that a UIM insurer will be bound by "findings, conclusions and judgment" entered in a lawsuit maintained by the insured against the tortfeasor in any case where the insurer has notice or opportunity to intervene in the underlying action against the tortfeasor. Finney, 21 Wash.App. at 618, 586 P.2d 519. Although I have some reservations about the correctness of that decision, it is unnecessary for us to decide here if that case was correctly decided.[1] I reach that conclusion because the requirements of Finney have not been met here. As noted above, the Finney court held only that an insurer is bound to the results of a lawsuit if it had notice of the proceeding or an opportunity to intervene. It reasoned that an insurer with knowledge of the lawsuit had to know that the lawsuit might affect its liability. Even assuming that this rule may, in certain instances, be extended to bind an insurer to the result of an arbitration proceeding, that should not be the result here because Allstate did not learn of the arbitration proceeding until just shortly before it was completed. The majority concludes that this makes no difference because Allstate knew of the underlying lawsuit and the "possibility of settlement or arbitration is implicit in the context of litigation." Majority op. at 356. While I agree that the possibility of a settlement is always implicit in litigation, the same cannot be said about arbitration. The only authority the majority cites for the proposition that arbitration is implicit in litigation is a Delaware case, Sutch v. State Farm Mut. Auto. Ins. Co., 672 A.2d 17 (Del.Super.Ct.1995). The Sutch case does not support the broad proposition advanced by the majority. In Sutch, the insured's *358 lawsuit against the tortfeasor was subject to compulsory arbitration pursuant to court rule. Under those circumstances, it follows that arbitration is an integral part of the lawsuit. Arbitration is not, however, always a feature of litigation in Washington. Indeed there is no evidence that arbitration of Fisher's lawsuit was required by court rule or private agreement.[2] Furthermore, I know of no authority that a third party can intervene in a private arbitration. Even in cases where arbitration is required by court rule, the civil rules relating to intervention do not apply. See MAR 1.3(b)(1). Consequently, an insurer such as Allstate would be unable to intervene in a court ordered arbitration proceeding even if it had wanted to do so.
In the final analysis, though, it is simply inequitable to hold that Allstate is bound under principles of collateral estoppel to the results of a proceeding it knew nothing about until the eleventh hour and in which it was unable to intervene. While perhaps one can fault Allstate for not intervening in Fisher's lawsuit so that it could attempt to protect itself by objecting to arbitration, that should not lead us to conclude that its failure to do so binds it to the results of the arbitration. To so conclude takes the Finney rule to an illogical extreme.[3]
In conclusion, it is my view that Allstate should not be bound to the result of the arbitration between Fisher and the tortfeasor. Because the majority concludes otherwise, I dissent.[4]
MADSEN, J., concurs.
NOTES
[1] See also RCW 48.01.030, which states:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.
[2] See, e.g., Champion Ins. Co. v. Denney, 555 So.2d 137 (Ala.1989); Sutch v. State Farm Mut. Auto. Ins. Co., 672 A.2d 17 (Del.Super.1995); State Farm Mut. Auto. Ins. Co. v. Jiles, 115 Ga. App. 193, 154 S.E.2d 286 (1967); Andeen v. Country Mut. Ins. Co., 70 Ill.App.2d 357, 217 N.E.2d 814 (1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967); Stewart v. Walker, 597 N.E.2d 368 (Ind.Ct.App.1992); Guillan v. Watts, 249 Kan. 606, 822 P.2d 582 (1991); Haas v. Freeman, 236 Kan. 677, 693 P.2d 1199 (1985); Aetna Cas. & Sur. Co. v. Souras, 78 Md.App. 71, 552 A.2d 908 (1989); Nationwide Mut. Ins. Co. v. Webb, 291 Md. 721, 436 A.2d 465, 24 A.L.R.4th 1001 (1981); Wells v. Hartford Accident & Indem. Co., 459 S.W.2d 253 (Mo. 1970); Dominici v. State Farm Mut. Auto. Ins. Co., 143 Mont. 406, 390 P.2d 806 (1964); Zirger v. General Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996); Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606 (1969); Allstate Ins. Co. v. Pietrosh, 85 Nev. 310, 454 P.2d 106 (1969); Kalata v. Motorists Mut. Ins. Co., No. 1995, 1995 WL 497619 (Ohio Ct.App. July 26, 1995); Motorists Mut. Ins. Cos. v. Handlovic, 23 Ohio St.3d 179, 492 N.E.2d 417 (1986); Keel v. MFA Ins. Co., 553 P.2d 153 (Okla.1976); Boughton v. Farmers Ins. Exch., 354 P.2d 1085, 79 A.L.R.2d 1245 (Okla.1960); Cook v. Federal Ins. Co., 263 S.C. 575, 211 S.E.2d 881 (1975); Harvey v. Birchfield, 535 S.W.2d 334 (Tenn.1976). See generally 1 Allan D. Windt, Insurance Claims and Disputes § 6.21 (3d ed. 1995) ("The majority of courts ... have held ... that if the insurer had notice of the tort suit and an opportunity to intervene but failed to seek intervention, it will be bound by the resolution of issues in the tort suit."); Francis M. Dougherty, Annotation, Right of Insurer Issuing "Uninsured Motorist" Coverage to Intervene in Action by Insured Against Uninsured Motorist, 35 A.L.R.4th 757, 761 (1985) ("[M]any courts have taken the position that the insurer may intervene in an action by its insured against an uninsured motorist.... [In such cases,] it appears well settled that an insurer who has an opportunity to intervene in such an action but fails to do so will be bound by the judgment in the action against the uninsured motorist."); 8C John Alan Appleman, Insurance Law and Practice § 5089.75 (1981) ("A judgment rendered against the uninsured motorist may be conclusive against the UM insurer, particularly where it has ... a right to defend or intervene, which it elected not to do.") (footnotes omitted). But see Peterman v. State Farm Mut. Auto. Ins. Co., 948 P.2d 63 (Colo.Ct. App.), rev'd, 961 P.2d 487 (Colo. 1998); Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 695 A.2d 1010 (1997); Alston v. Amalgamated Mut. Cas. Co., 53 Misc.2d 390, 278 N.Y.S.2d 906 (Sup.Ct.1967); Allstate Ins. Co. v. Hunt, 450 S.W.2d 668 (Tex. Civ.App.1970), aff'd, 469 S.W.2d 151 (Tex.1971).
[3] However, it appears all courts addressing this issue hold the insurer will not be bound by the resulting judgment unless it had notice of the underlying action and an opportunity to intervene. This is also a requirement under Finney to which we adhere. 21 Wash.App. at 617-18, 586 P.2d 519.
[4] Allstate knew of the action in February 1994 at the very latest because it attended a deposition for the case. The arbitration occurred in September 1994.
[5] Allstate contends the plaintiff proposed binding arbitration in return for an agreement not to pursue an excess judgment against Allman, the tortfeasor. Allstate suggests such an agreement was in secret or done to deceive Allstate. Allstate cites no facts in the record to support this allegation and does not dispute it had notice of the action against the tortfeasor at an early stage of the case.
[6] We note authority exists for not requiring an arbitration award to be reduced to judgment. See Restatement (Second) of Judgments §§ 13, 84 (1982) (suggesting a final arbitration award without a court judgment will suffice for collateral estoppel purposes); Finney, 21 Wash.App. 601, 586 P.2d 519 (The Finney rule, along with the rule in a majority of states, relies on collateral estoppel principles. It does not apply the doctrine's elements strictly.); Boyd v. Davis, 127 Wash.2d 256, 262-63, 897 P.2d 1239 (1995) (Unless the face of the arbitration award shows an error of law, the award will not be modified by the court.); Landmark v. Mader Agency, Inc., 126 Idaho 74, 878 P.2d 773 (1994) (Court will not modify award for factual errors.).
[1] As the majority points out, in our review of Finney "we did not explicitly address [the issue of] whether an insurer was bound by a previous judgment" merely noting that the issue had been "`thorough and adequately addressed by ... the Court of Appeals or [had] been abandoned by petitioner for lack of citation to authority.'" Majority op. at 353 (quoting Finney, 92 Wash.2d at 750, 600 P.2d 1272). In light of what can only be described as a qualified endorsement of Finney, it is difficult to understand how the majority concludes that Finney established a rule of law which binds this court.
[2] Superior court civil actions are subject to mandatory arbitration if a money judgment of $35,000 or less is sought and the judges of the particular superior court jurisdiction have approved mandatory arbitration. RCW 7.06.020. The judgment sought by Fisher exceeded $35,000. Indeed, the arbitrator awarded her $236,000.
[3] Allstate indicated that it had legitimate reasons for not intervening in the lawsuit. It points out, in that regard, that Fisher filed suit against it as well as against the tortfeasor, and that the lawsuit against it was originally scheduled to proceed to trial first. Allstate also points out that intervention in Fisher's suit against the tortfeasor would have put it in an irreconcilable conflict with its insured in that its interest would have been to minimize recovery whereas its insured's interest would be to maximize recovery.
[4] Amicus, Washington State Trial Lawyers Association, suggests that the rule should be that an insurer will be bound by the arbitration in these circumstances if the insurer is invited by the parties to the arbitration to intervene in the proceeding and declines to do so. While I express no view on that proposal, I note that there is no evidence here that such an invitation was tendered to Allstate.