[No. 34734-2-II.   Division Two.   July 3, 2007.]

HELEN MATHIOUDAKIS, *Appellant*, v. CHRISTINA FLEMING ET AL., *Respondents.*

Thomas A. Brown (of Brown Lewis Janhunen & Spencer), for appellant.

Marilee C. Erickson and Terry J. Price (of Reed McClure), for respondents.

¶1 HUNT, J. — A jury found that Christina Fleming was not negligent when she drove through a fallen tree blocking the highway and collided with a truck parked in the highway on the other side of the tree, injuring Helen Mathioudakis, who was sitting inside the truck. Mathioudakis appeals the trial court's denial of her pretrial motion for summary judgment and her motion to estop Fleming from denying negligence under the Fisher/Finney[1] rule. Holding that Mathioudakis's arbitration with her insurance carrier was not binding on Fleming under the Fisher/Finney rule, we affirm.

---

[1] Fisher v. Allstate Ins. Co., 136 Wn.2d 240, 961 P.2d 350 (1998); Finney v. Farmers Ins. Co. of Wash., 21 Wn. App. 601, 586 P.2d 519 (1978).

## FACTS

### I. Accident

¶2  Late one November night, George Belesiotis drove his truck on two-lane highway SR 109 from a dinner party in Ocean Shores to his home in Westport. His wife, Helen Mathioudakis, rode in the front passenger seat. It was windy and, according to Belesiotis, he drove approximately 50 m.p.h.; the speed limit for SR 109 is 55 m.p.h.

¶3  Belesiotis saw a car approaching from the opposite direction and lowered his high-beam headlights to low-beam. After the oncoming car passed, he raised his low-beam headlights back to high-beam. Almost immediately, he saw that something was blocking the road ahead, applied the brakes, and came to a complete stop without colliding with the object—a large tree that had fallen, blocking both lanes of the two-lane highway.

¶4  Belesiotis told Mathioudakis to call 911 to report the fallen tree, which she did. The 911 operator told Mathioudakis to wait until help arrived. So Belesiotis and Mathioudakis waited in their truck, parked in their original lane of travel. At this point, both were uninjured.

¶5  As Belesiotis and Mathioudakis waited, they periodically saw cars approach from both directions, slow down, stop before the downed tree, and then turn around. After approximately five or six minutes, Belesiotis heard something hit the top of his truck, got out of the truck, and saw that the wind was causing another tree to bend over his truck. Afraid that the tree would also fall, he decided to move his truck across the highway and park it in the opposite lane of oncoming traffic. He felt this spot was safest because the tree blocked oncoming traffic, and it was away from other trees that threatened to fall.

¶6  As Belesiotis and Mathioudakis again waited in their truck, Christina Fleming was driving toward them on SR 109 at approximately 55-60 m.p.h., when she noticed head-

lights flash on the opposite side of the road. Thinking that someone was warning about a nearby police officer, she slowed down. Quickly thereafter, she saw tree branches coming at her windshield, so she slammed on her brakes. But she was unable to come to a stop before hitting the tree.

¶7 Fleming's car struck the fallen tree, drove through its top branches, emerged on the other side of the tree, and struck Belesiotis and Mathioudakis's truck with them inside. The truck's driver-side airbag deployed, protecting Belesiotis. But Mathioudakis sustained bruises and cuts to her face and body, and injuries to her neck and back.

## II. PROCEDURE

¶8 Mathioudakis filed two claims for her injuries: a claim with her insurance carrier under her under-insured motorist (UIM) policy and this lawsuit against Fleming in Grays Harbor Superior Court. Mathioudakis entered into arbitration with her UIM insurance carrier. Neither Fleming nor her insurance carrier were parties to this arbitration. The panel of arbitrators determined that Fleming was negligent and that neither Belesiotis nor Mathioudakis was negligent. The arbitrators awarded Mathioudakis $250,000 in damages from her UIM carrier.

¶9 Before trial, Fleming moved for summary judgment, asserting that the undisputed facts supported only one reasonable conclusion—that she did not act negligently. Mathioudakis filed a cross-motion for summary judgment, asserting that the undisputed facts supported only one reasonable, but opposite, conclusion—that Fleming acted negligently and Belesiotis did not. The trial court denied both parties' motions for summary judgment, stating, "Due to the convoluted factual positions of both parties, it is the position of this court that trial will need to determine resolution of this case." Clerk's Papers at 177.

¶10 A lengthy discovery period ensued. But as the trial date neared, Mathioudakis moved the trial court to estop Fleming from asserting that she was not negligent. Basing

her motion on her favorable arbitration ruling against her UIM carrier, Mathioudakis argued that, under *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 996 P.2d 603 (2000), the *Fisher/Finney* rule estopped Fleming from claiming in her defense that she was not negligent because the arbitration panel had already decided the question of negligence adversely to her. The trial court denied Mathioudakis's motion.

¶11 After the parties rested at trial, Mathioudakis moved for a directed verdict that Fleming was negligent, and that she (Mathioudakis) and Belesiotis were not negligent. The trial court denied her motion and ruled that a jury should decide the questions of negligence. The jury returned a verdict for Fleming, finding that she was not negligent and finding that Belesiotis was negligent. The trial court denied Mathioudakis's motion for a new trial.

¶12 Mathioudakis appeals.

## ANALYSIS

### CLAIM PRECLUSION AND THE *FISHER/FINNEY* RULE

¶13 Mathioudakis argues on appeal that the trial court erred as a matter of law when it denied her collateral-estoppel-based motion to prevent Fleming from litigating negligence at trial.[2] Mathioudakis contends that the Supreme Court's decision in *Lenzi*, 140 Wn.2d 267, reiterating the *Fisher/Finney* rule, barred Fleming from relitigating the issue of negligence-based liability because the arbitration between Mathioudakis and her UIM carrier had already determined this issue adversely to Fleming.

¶14 Fleming responds that *Lenzi* and the *Fisher/Finney* rule do not apply here because she was not a party to the arbitration, and the arbitrators decided only that Mathioudakis's UIM carrier would cover Mathioudakis under her

---

[2] Collateral estoppel can operate offensively in favor of the plaintiff to prevent relitigating issues essential to the plaintiff's claim. *See, e.g., Am. Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 551 P.2d 1038 (1976).

UIM policy, based on their findings that neither she nor her husband was at fault and that Fleming was at fault in the accident.

■ ¶15 We review a trial court's interpretation of case law de novo. *State v. Willis*, 151 Wn.2d 255, 261, 87 P.3d 1164 (2004); *see also State v. Campbell*, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995). Having done so, we agree with the trial court.

## The *Fisher/Finney* Rule

¶16 In *Fisher v. Allstate Insurance Co.*, 136 Wn.2d 240, 961 P.2d 350 (1998), our Supreme Court held that when an insured files an action against the tortfeasor, and the insured also holds a UIM or uninsured motorist policy, the insurer is bound by the results of the action if the insurer had notice of the insured's action. *Id.* at 242 (upholding that "an underinsured carrier is bound by the resulting judgment against a tortfeasor when an insurer has notice and an opportunity to intervene," *Finney v. Farmers Ins. Co. of Wash.*, 21 Wn. App. 601, 586 P.2d 519 (1978), *aff'd*, 92 Wn.2d 748, 600 P.2d 1272 (1979)). In *Fisher*, Kelly Fisher was seriously injured in a motorcycle accident when a car struck her. The tortfeasor's liability coverage limit was $125,000, and Fisher's UIM coverage limit was $25,000. *Fisher*, 136 Wn.2d at 242-43. Fisher sued the tortfeasor; she filed a separate suit against her insurance carrier for UIM coverage. Fisher's insurance carrier was aware of her suit against the tortfeasor but chose not to participate.

¶17 Unlike here, where Mathioudakis and her UIM insurer entered into arbitration to determine insurance coverage, Fisher entered into arbitration with the tortfeasor before Fisher's UIM claim went to trial; although Fisher's insurer had notice, it did not participate in the arbitration. The arbitrator determined that the tortfeasor was liable to Fisher for $236,000 in damages. *Id.* at 243. Fisher then demanded that her insurance company pay its

UIM coverage limit of $25,000. The trial court held that Fisher's insurer was bound by the arbitration award; the Court of Appeals affirmed. The Supreme Court held that (1) *Finney* was correctly decided; (2) *Finney* governed these circumstances, *Id.* at 252; and (3) because Fisher's insurer had notice of Fisher's claim against the tortfeasor, but elected not to intervene, the arbitration ruling was binding on Fisher's insurer. *Id.* at 251.

¶18 *Lenzi*'s facts are nearly identical to those in *Fisher*. The difference, however, is that Lenzi obtained a default judgment against the tortfeasor before Lenzi's UIM claim went to trial. *Lenzi*, 140 Wn.2d at 271-72. The issue was whether the default judgment bound Lenzi's insurer. Reaffirming its reasoning in *Fisher*, the *Lenzi* court held that Lenzi's UIM insurer was bound by the default judgment because it received notice of Lenzi's summons and complaint against the tortfeasor, and it had elected not to intervene or to file a notice of appearance. *Id.* at 272, 278, 281.

¶19 Mathioudakis argues that the *Fisher/Finney* rule should apply to bind Fleming to the arbitration outcome between Mathioudakis and her UIM insurer. This argument fails because Mathioudakis's situation is a reversal of the situations in *Finney* and *Lenzi*.

¶20 The *Fisher/Finney* rule is loosely based on the principles of collateral estoppel. *Fisher*, 136 Wn.2d at 252 n.6. In both *Fisher* and *Lenzi*, the Supreme Court noted the difference between a UIM insurer's intervening in an action between its insured and the tortfeasor, and a tortfeasor's intervening in an action between an insured plaintiff and her insurer: In the former situation, the insurer is in privity with its insured; in the latter, the tortfeasor is not in privity with the insured plaintiff or her insurer. In *Lenzi*, the court considered that the plaintiff's insurer had a right to intervene in an action between its insured and the tortfeasor because its interest would be affected by the outcome and the insurer was in privity with

a party to the dispute, i.e., its plaintiff insured. *Lenzi*, 140 Wn.2d at 276.

¶21 Although noted in case law, the insurer's right to intervene is not the basis for the *Fisher/Finney* rule. Rather, the insurer's contractual obligation to pay is the basis for the rule. *Id.* at 280-81. The *Fisher/Finney* rule is based on an insurer's contractual promise to pay its insured or another whom its insured has injured. *Id.* Here, there was clearly an insurance contract between Mathioudakis and her UIM insurer. But there was no contract between Mathioudakis and Fleming and, thus, no privity between Fleming and either Mathioudakis or Mathioudakis's UIM insurer. Thus, Fleming had no standing to intervene in the arbitration between Mathioudakis and her UIM insurer; therefore, the outcome of that arbitration had no bearing or effect on Fleming's interests.

¶22 The *Fisher/Finney* rule does not operate, as Mathioudakis contends, to bind an alleged tortfeasor to the outcome decided in a dispute between the UIM insurer and the UIM insured arbitrated under their insurance contract. We hold, therefore, that the arbitrators' decision—that Mathioudakis's UIM insurer was liable for her damages under her UIM policy, based on a finding that Fleming, not Mathioudakis and Belesiotis, was negligent—did not bar Fleming from litigating the issue of negligence at trial on Mathioudakis's negligence action against Fleming.

¶23 We affirm.

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

VAN DEREN, A.C.J., and BRIDGEWATER, J., concur.

After modification, further reconsideration denied August 28, 2007.

Review denied at 163 Wn.2d 1041 (2008).